IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| 3 NORTH, PLLC,<br><br>                              Plaintiff,<br><br>    v.<br><br>CORPORATION OF THE PRESIDING<br>BISHOPS OF THE CHURCH OF JESUS<br>CHRIST OF LATTER-DAY SAINTS,<br><br>                            Defendant. | Action No. 3:09–CV–669 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant's Motion to Dismiss (Docket No. 2) based on Federal Rule of Civil Procedure 12(b)(3).  For the reasons stated below, the Court GRANTS the Motion.

**I. BACKGROUND**

This diversity action concerns a contract dispute between the architectural firm 3 North, PLLC and the Corporation of the Presiding Bishops of the Church of Jesus Christ of Latter-Day Saints ("the Church").  The Church, a Utah-based corporation, is in the process of developing an early Church settlement into an interpretive center located in Nauvoo, Illinois.  To aid in the renovations, the Church hired Virginia-based 3 North to perform a variety of architectural and landscaping tasks.  On November 6, 2007, the parties entered into a Project Services Agreement ("PSA"). (Cory Karl Aff., Oct. 28, 2009, Exh. A.)  The Church referred to the PSA as an "interim" agreement that would control the parties' interactions until the Church decided the amount of 3 North's services it would employ.

(Sanford Bond Aff., Nov. 11, 2009, Exh. G.)  The PSA stated that "[3 North] will provide consultation, design, and contract administration services relating to the Nauvoo projects." The PSA also contained a number of other contract provisions, including indemnity, integration, termination, confidentiality, and attorney's fees clauses.  The PSA also had a forum selection clause and choice of law clause, requiring that all disputes regarding the agreement, its creation, and its performance be governed by the laws of Utah as interpreted by a court sitting in Utah.  Under the PSA, 3 North was to be paid based upon hourly rates stated in the PSA.  Additionally, the PSA contained several work restrictions important to the Church, including a limitation on tobacco and alcohol consumption, a prohibition on weapons and profanity, a requirement that workers wear proper attire while on the premises, and a prohibition on working on Sundays.

In December 2007, 3 North sent the Church a document titled "Master Agreement." (Bond Aff., Exh. A.)  In January, Cory Karl, project manager for the Church, sent an email to 3 North requesting 3 North to adjust the project numbers based on the Church's approved budget.  (Id., Exh. B.)  On January 22, 2008, 3 North sent the Church a revised Master Agreement reflecting the requested changes.  (Id., Exh. C.)  Both documents proposed a fixed fee compensation arrangement as opposed to the hourly rate arrangement used in the PSA.  The Master Agreement does not contain indemnity, integration, termination, confidentiality, attorney's fees, forum selection, or choice of law clauses.  Nor does the Master Agreement contain the unique provisions present in the PSA, such as the prohibition on smoking and drinking on the premises.  Although 3 North signed the Master Agreement, the Church did not.

Prior to January of 2008, the parties operated under the PSA and thus 3 North billed on an hourly basis. This dispute was born in January 2008, after 3 North provided the Church with the revised Master Agreement and began sending the Church invoices calculated on a fixed fee basis. The Church alleges that upon receiving the first invoice with a fixed fee, Karl contacted Danny MacNelly of 3 North to confirm that the parties were still operating under the PSA, not the Master Agreement. After apparently being told that 3 North had the hours to back up the invoice, the Church paid the bill while allegedly being under the impression that 3 North would later provide the exact hour figures enabling the parties to reconcile the charges based on actual hours. (Church Reply ¶ 11.) Via the affidavit of employee Bond, 3 North states it never had such a conversation. (3 North Mem. in Opp. ¶ 20; Bond Aff. ¶ 18.) The Church continued to fully pay 3 North for each of the invoices through December 2008, at which point Karl spoke with MacNelly in an attempt to reconcile the fixed fee charges to reflect actual hours worked. MacNelly, however, informed the Church that it had not kept track of its hours. Since that time, although 3 North continued to perform services in January 2009, the Church has not paid the March 2009 invoice for that work, which totals $163,975.50.

In September 2009, 3 North filed a contract claim against the Church in the Circuit Court for the City of Richmond. The Church timely removed the case to this Court and now seeks dismissal based on Rule 12(b)(3) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

Resolving this Motion requires the Court to address whether there is a forum selection clause applicable to this dispute. The Church maintains that the PSA's valid forum

selection clause is applicable to this dispute whether the Master Agreement was accepted or not. 3 North argues that because there is no forum selection clause in the Master Agreement, which is the applicable contract in this case, it may bring its contract claim under the general venue statute.

**A. Whether There Is a Forum Selection Clause Applicable To This Dispute**

Fed. R. Civ. P. 12(b)(3) allows a party to assert the defense of "improper venue" by motion. Generally, the burden of showing proper venue lies with the plaintiff. Bartholomew v. Virginia Chiropractors Assoc., 612 F.2d 812, 816 (4th Cir. 1979).

The Church invokes a forum selection clause of the PSA in its motion to dismiss. When a court considers a motion to dismiss for improper venue based on a forum selection clause,

> the court is allowed to freely consider evidence outside the pleadings, unlike under a 12(b)(6) motion. [Sucampo Pharms, Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006).] In addition, when resolving a motion to dismiss under Rule 12(b)(3), "'the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis.'" Id. at 549 (quoting Argueta v. Banco Mexicano, 87 F.3d 320, 324 (9th Cir. 1996)). Nevertheless, "[i]n deciding a motion to dismiss, all inferences must be drawn in favor of the plaintiff, and 'the facts must be viewed as the plaintiff most strongly can plead them.'" Sun Dun, Inc. of Washington v. Coca-Cola Co., 740 F. Supp. 381, 385 (D. Md. 1990) (quoting Coakley & Williams, Inc. v. Shatterproof Glass Corp., 706 F.2d 456, 457 (4th Cir. 1983)).

Silo Point II LLC v. Suffolk Const. Co., Inc., 578 F. Supp. 2d 807, 809 (D. Md. 2008). Here, the Church has supplied a copy of the PSA, which can be considered by the Court. (Karl Aff., Exh. A.).

The Church alleges that the PSA is the contract that controls the parties here and thus the forum selection clause is applicable. The Church notes that it never signed the

4

Master Agreement and, according to the Church, nor would it have ever signed the Master Agreement, as it lacks the typical provisions that the Church has in its contracts, such as the work restrictions and other basic contract provisions dealing with integration, choice of law, forum selection, and indemnification.  In February of 2009, the parties were still operating under the PSA, the Church says, because at that time, the parties entered into a separate agreement to deal with the consultants fees related to the Arrival Center despite an Addenda to the Master Agreement specifically dealing with the Arrival Center.  In the Church's view, if the parties were then operating under the Master Agreement, there would have been no need to negotiate and execute a separate agreement for the consultants because the Master Agreement and its fixed fee arrangement would have encompassed that issue.  Because it never entered into the Master Agreement, the Church concludes that the PSA and its Utah forum selection clause are in full effect and should be followed.

In response, 3 North alleges that there is no forum selection clause applicable to this dispute because it is suing under the Master Agreement, which unlike the PSA, does not have a forum selection clause.  3 North avers that the parties have fully performed the PSA and that it is not relevant to the instant dispute.  Although the Church never signed the Master Agreement, 3 North maintains that the Church accepted it by performance.  For nearly a year, 3 North points out, the Church paid the amount stated in invoices that listed the fee in terms of a fixed amount.  From an objective standpoint, the Church not only accepted by performance, but also, 3 North notes, failed to object in any way to how the work was billed.  3 North states that the Church has failed to provide any piece of credible evidence that the parties actually discussed the potential of settling any discrepancy

between the fixed fee charges and the allegedly proper hourly rates at a later date. Because the Master Agreement controls here and it does not have a forum selection clause, 3 North says that the general venue provision applies and is satisfied in this district.

The Church rejects the argument that it accepted the Master Agreement by performance, asserting that there was never mutual assent to the terms of the Master Agreement. The Church further notes that even if the Court concludes that there was acceptance by performance, the forum selection clause in the PSA is still applicable and operative because the Master Agreement did not supersede the PSA. Instead, the Church explains, the Master Agreement, which lacks an integration clause, is simply a second contract that operates in addition to the PSA. As the forum selection clause was never superseded, it is applicable under the express terms of the clause, which state that all disputes related to the design of the project would be subject to Utah law in a Utah court. The unpaid balance at issue in this case, the Church says, falls within the clause's scope. Thus, even if the Master Agreement was accepted, the Church argues the case should be dismissed or transferred to Utah.

The base-line requirement for finding the existence of a contract, written, oral, implied, or otherwise, is a showing of mutual assent at the time of agreement, i.e., the proverbial "meeting of the minds." Hertz Corp. v. Zurich American Ins. Co., 496 F. Supp. 2d 668, 676 (E.D. Va. 2007) (citing Snyder-Falkinham v. Stockburger, 457 S.E.2d 36, 39 (Va. 1995)).[1] Mutual assent is determined "exclusively from those expressions of [the parties']

---

[1] Because the question is whether a contract with a forum selection clause exists, Virginia law governs this diversity action. Limbach Co., LLC v. Zurich Am. Ins. Co., 396 F.3d 358, 361 (4th Cir. 2005). If the PSA is found to apply to this dispute under Virginia law, the

intentions which are communicated between them." Lucy v. Zehmer, 84 S.E.2d 516, 522 (Va. 1954). This question of fact is determined objectively, from a third-person perception of the words and actions of the parties, without regard to the subjective intent or assumptions of the parties. Id.; see also Phillips v. Mazyck, 643 S.E.2d 172, 175 (Va. 2007) (A court may "ascertain whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind.") Thus, the question before the Court is whether an objective appraisal of the words and actions of the parties compels the conclusion that the parties intended to be bound by the terms of the PSA or the Master Agreement or both. The absence of an authorized signature does not defeat the existence of a contract if the actions of the parties yield an objective manifestation of an intent to enter into an agreement. Galloway Corp. v. S.B. Ballard Construction Co., 464 S.E.2d 349, 356 (Va. 1995) (holding that an apparent administrative "oversight" resulting in a failure of one party to sign the contract would not defeat the parties' intentions). See generally 17 Am. Jur. 2d Contracts § 96 (2006) (discussing acceptance by performance).

     As an initial matter, the Court finds that regardless of whether the Master Agreement is an operative contract, the forum selection clause in the PSA controls this dispute. With that said, however, the Court does conclude that when viewing the evidence in its entirety, there is insufficient evidence to prove that the parties ever mutually assented to the terms of the Master Agreement. Although the Church paid invoices calculated using a fixed fee for an entire year's worth of services, 3 North specifically

---

interpretation of that contract is governed by Utah law pursuant to the PSA's choice of law provision. See Paul Bus. Sys., Inc. v. Canon U.S.A., Inc., 397 S.E.2d 804, 807 (Va. 1990).

requested that the Church sign the Master Agreement—a request that remains unrequited. If the parties intended to sign a formal writing but did not, this creates a presumption that no contract exists. See Atlantic Coast Realty Co. v. Robertson, 116 S.E. 476, 478 (Va. 1923). That presumption can be overcome only with "strong evidence." Andrews v. Sams, 353 S.E.2d 735, 737 (Va. 1987).

The required "strong evidence" is not present here. Unlike in Galloway, the Church's failure to sign the Master Agreement does not appear to have been an administrative "oversight." See Galloway, 464 S.E.2d at 356. In fact it appears that neither party, even as of February 2009, believed that the Master Agreement controlled the parties' interactions. When 3 North wanted to obtain consulting services for the Arrival Center, the parties would not have entered into a separate Consultant Services Agreement if the parties were operating under the Master Agreement because the Agreement's fixed fee arrangement for the Arrival Center would have covered the consultant fees. Moreover, whether or not the parties discussed trying to later resolve the discrepancies between the invoices as paid and the actual hours worked—an issue the parties hotly dispute—, the objective manifestation of the parties at most demonstrates an intention to be bound by the payment amounts stated in the invoices, not all of the terms of the Master Agreement. Additionally, how the parties negotiated and entered the PSA and the consultant agreement established a course of dealing, which provides some evidence to support the conclusion that when the Church intends to enter a contract with 3 North, it includes a forum selection clause and the work restrictions the Church finds important. See Hertz Corp. v. Zurch American Ins. Co., 496 F. Supp. 2d 668, 677 (E.D. Va. 2007). For those reasons, the Court finds that the Master

Agreement is not an operative contract. As a result, the PSA's forum selection clause is in effect and, by its terms, applicable to this dispute.

Alternatively, the Court notes that even if the Master Agreement was a valid contract, the PSA would still apply to the instant dispute. A business relationship can be governed by more than one document, in which case the documents are construed together to determine the parties' intent. Daugherty v. Diment, 385 S.E.2d 572, 574 (Va. 1989). In construing the documents as a whole, a court should not treat any word or clause as meaningless if any reasonable interpretation consistent with the other portions of the contract can be ascribed to it. Ames v. American Nat'l Bank, 176 S.E. 204, 216 (Va. 1934). Here, even if the parties entered into the Master Agreement, it lacked an integration clause that would have abrogated all prior agreements between the parties and it does not contain any other provision that would conflict with the PSA's forum selection clause. Instead, because the PSA remains in effect, the forum selection clause still applies to all disputes related to the consultation, design, and contract administration services for the Nauvoo projects. This dispute comfortably fits within the scope of that clause and therefore it is not only in effect, but also applicable to this case.[2]

**B. Attorney's Fees**

In addition to dismissal of this action, the Church also seeks its attorney's fees and costs. The PSA, in part, states "[s]hould either party commence litigation to enforce or rescind any provision of this Agreement, the prevailing party will be entitled to recover its

---

[2] The Court notes that neither party disputes that if the PSA is applicable to this dispute, the forum selection clause is a valid, enforceable provision.

attorneys fees and costs, including without limitation all copy costs and expert and consultant fees and expenses, in that action and on all appeals, from the other party." (Karl Aff., Exh. A., ¶ 11.) Because the Court will grant the Church's Motion, the Church is the prevailing party and is entitled to its attorney's fees and costs. The Church is therefore DIRECTED to submit to the Court its attorney's fees and costs related to this Motion, so that the Church may recover those costs.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss. An appropriate Order will accompany this Memorandum.

Let the Clerk send a copy of this Memorandum to all counsel of record.

> _____/s/_____
> James R. Spencer
> Chief United States District Judge

ENTERED this __10th__ day of December 2009